IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | CRIMINAL CASE NO. |
| | : | 1:21-cr-109-AT |
| GEE-KUNK CHANG, | : | |
| Defendant. | : | |

# **ORDER**

Defendant Gee-Kunk Chang was indicted for conspiring to commit visa fraud, conspiring to commit wire fraud, and wire fraud. (Doc. 1). He now asks the Court to dismiss the wire fraud and wire fraud conspiracy counts (Counts 2–10) for failing to state an offense. [Doc. 47].

Magistrate Judge Anand's Final Report and Recommendation ("R&R"), [Doc. 99-2], recommends the denial of Chang's Motion. Chang timely objected to the R&R, [Doc. 106]. Upon *de novo* review of the record, the Court **DECLINES TO ADOPT** the specific portions of the R&R related to the Motion to Dismiss, [Doc. 99-2 at 5–21], and **GRANTS** Chang's Motion to Dismiss Counts 2–10 of the Indictment, [Doc. 47].

I. **BACKGROUND**

In March 2021, Chang—a professor at Georgia Institute of Technology's ("Georgia Tech") School of Electrical and Computer Engineering—was indicted on one count of conspiring to commit visa fraud, in violation of 18 U.S.C. § 371; one count of conspiring to commit wire fraud, in violation of 18 U.S.C. § 1349; and eight counts of wire fraud, in violation of 18 U.S.C. § 1343. (Doc. 1).

Because the sufficiency of the wire fraud and wire fraud conspiracy counts must be determined upon the specific language the Indictment used to charge those counts, *see United States v. Sharpe*, 438 F.3d 1257, 1263 (11th Cir. 2006), the Court will only recount the allegations contained in—or expressly incorporated into—Counts 2–10 of the Indictment, *see United States v. Schmitz*, 634 F.3d 1247, 1261–62 (11th Cir. 2011).

A. **The Complaint**

Count 2 (Conspiracy to Committ Wire Fraud) and Counts 3–10 (Wire Fraud) incorporate Paragraphs 1–8 of the Indictment, which allege:

*The J-1 Visa Program*

1. The United States Department of State (the "Department of State") offers an Exchange Visitor non-immigrant visa, known as a J-1 Visa, for individuals approved to participate in work-and-study-based exchange visitor programs. A J-1 Visa is for individuals who intend to participate in an approved program for teaching, instructing or lecturing, studying, observing, conducting research, consulting, demonstrating special skills, receiving training, or receiving graduate medical education or training.

2. The Department of State designates public and private entities, such as universities and colleges, to act as exchange sponsors for

  the J-1 Visa program. To receive a J-1 Visa, an individual must be sponsored by a designated exchange sponsor.

3. The Georgia Institute of Technology ("Georgia Tech"), a college located in Atlanta, Georgia, is authorized by the Department of State to participate in the J-1 Visa program as a designated exchange sponsor.

4. To obtain a J-1 Visa, an individual must complete and submit to the Department of State: (i) a "Certificate of Eligibility for Exchange Visitor (1-1) Status," also known as a Form DS~2O19; and (ii) a Nonimmigrant Visa Application, also known as a Form DS-160.

5. The Department of State operates an electronic database, known as the Student and Exchange Visitor Information System ("SEVIS"), that maintains information on foreign nationals that enter the United States on a J-1 Visa. A J-1 Visa recipient must provide a "Site of Activity" for entry into SEVIS. The "Site of Activity" is the physical, geographic location where the J-1 Visa recipient will participate in his or her exchange program.

*The Defendants*

6. GEE-KUNG CHANG was a professor of the School of Electrical and Computer Engineering at Georgia Tech in Atlanta, Georgia.

7. JIANJUN YU was the Director of ZTE USA Inc.'s ("ZTE") optics laboratory in Morristown, New Jersey.

*The Chinese Nationals*

8. F.L., JS., Y.Z., R.D., L.Z., J.Z., and X.L. were Chinese nationals affiliated with universities in China.

(Indictment, Doc. 1 ¶¶ 1–8).

  Count 2, contains two additional paragraphs. The first provides a general description of the Wire Fraud Conspiracy offense by tracking the language of 18 U.S.C. §§ 1343, 1349:

> Beginning on an unknown date, but at least by on or about January 30, 2015, and continuing through at least on or about November 30, 2018 in the Northern District of Georgia and elsewhere, the defendants, GEE KUNG CHANG and JIANJUN YU, knowingly and willfully combined, conspired, confederated, agreed, and had a tacit understanding with each other and with others unknown to the Grand Jury, to devise and intend to devise a scheme and artifice to defraud Georgia Tech, and to obtain money and property from Georgia Tech by means of materially false and fraudulent pretenses, representations, and promises, as well as by omissions of material facts, and for the purpose of executing such scheme and artifice and to obtain money and property, and attempting to do so, did knowingly transmit and cause to be transmitted, by means of wire communication in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343.

(Doc. 1 ¶ 50). The second paragraph provides factual allegations supporting the charge, which it labels the "Manner and Means of the Conspiracy":

> It was part of the manner and means of the conspiracy that:
>
> a. GEE-KUNG CHANG hired J.Z. and X.L. as postdoctoral researchers. J.Z. and X.L. received a salary from Georgia Tech that was set by CHANG.
>
> b. J.Z. and X.L., at JIANJUN YU's direction, worked at ZTE at certain times during their employment with Georgia Tech, unbeknownst to Georgia Tech officials.
>
> c. Even though J.Z. and X.L. were working for ZTE, GEE-KUNG CHANG directed Georgia Tech funds to be paid as J.Z.'s and X.L.'s salaries via direct deposit payments.

(*Id.* at ¶ 51).

Counts 3–10 incorporate Paragraph 51's description of the "Manner and Means of the Conspiracy." *See* (*id.* at 52). They also provide a general description of the Wire Fraud offense (tracking the language 18 U.S.C. § 1343) and include a

table listing specific "Wire Communications" in the form of direct deposits from Georgia Tech to J.Z.'s and X.L.'s bank accounts:

> On or about the dates listed in the following table, in the Northern District of Georgia and elsewhere, the defendants, GEE-KUNG CHANG and JIANJUN YU, aided and abetted by each other and others unknown to the Grand Jury, having knowingly devised and intending to devise the aforementioned scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, as well as by omissions of material facts, as set forth in Count Two of this Indictment, did with intent to defraud cause the transmission by means of wire communication in interstate and foreign commerce certain writings, signs, signals, pictures, and sounds, that is, the wire communications specified in the following table, for the purpose of executing such scheme and artifice . . . All in violation of Title 18, United States Code, Section 1343 and Section 2.

(Doc. 1 ¶ 53).

### B.   Procedural History

Chang's Motion to Dismiss argues that the Indictment's wire fraud charges fail to adequately allege that Georgia Tech was deprived of money or property, or more basically, that money or property were the object of the alleged fraudulent scheme. *See* [Doc. 47 at 1]. Relying on the Supreme Court's decision in *Kelly v. United States*, 140 S.Ct. 1565 (2020), he argues that the focus of the alleged scheme was fraudulently obtaining J-1 visas from the U.S. Government, and that any salary payments from Georgia Tech to the J-1 visitors were an incidental byproduct of the larger scheme. Because *Kelly* held that a wire fraud conviction can only stand where the money or property loss in question was the "object of the fraud" rather than "an incidental byproduct of the scheme," *see id.* at 1573, Chang argues that the Indictment fails to allege viable wire fraud charges. Chang also asserts that, as

5

a threshold matter, the Indictment does not clearly allege that Georgia Tech was misled into paying the J-1 visitors' salaries, because "[m]erely alleging the scholars were performing labor 'for ZTE' is not the same as alleging they were not also performing work for Georgia Tech." *See* [Doc. 47 at 14]. Thus, he argues that Georgia Tech "received exactly what it paid for" and were not the victims of fraud. [*Id.* at 18–19] (quoting *United States v. Takhalov*, 827 F.3d 1307, 1314 (11th Cir. 2016)).

The R&R rejects these arguments. It concludes that when the Indictment is read in the light most favorable to the Government, "the wire fraud counts allege a straightforward monetary fraud that overlapped with and complemented the visa fraud scheme" and was more than merely "incidental." [Doc. 99-2 at 12, 13]. Further, it finds that "a reader of the Indictment is left with the plain inference that these researchers were being paid by Georgia Tech for the work being done instead for ZTE." [*Id.* at 13]. Ultimately, the R&R concludes that that the Indictment adequately alleges the wire fraud counts and that the bulk of Chang's arguments should be raised at trial, rather than the pleading stage.

Chang timely objected to the R&R, [Doc. 106], and this review followed.

## II. STANDARD OF REVIEW

The Federal Magistrates Act[1] and Rule 72 of the Federal Rules of Civil Procedure divide pretrial matters assigned to magistrate judges into two

---

[1] *See* 28 U.S.C. § 636(b)(1).

categories: dispositive or non-dispositive. Different standards of review apply to each category.

Where, as here, timely objections are made to a magistrate judge's order on a dispositive pretrial matter—such as a motion to dismiss an indictment—a district judge has broad discretion to accept, reject, or modify a magistrate judge's proposed findings and recommendations. *See United States v. Raddatz*, 447 U.S. 667, 680 (1980); *Robertson v. All Am. Quality Foods, Inc.*, 246 F. Supp. 3d 1365, 1371 (N.D. Ga. 2017). The court reviews any portion of the R&R that is the subject of a proper objection *de novo* and any non-objected portion under the "clearly erroneous" standard. *See Robertson*, 246 F. Supp. 3d at 1371; *see also* Fed. R. Civ. P. 72, Advisory Committee Note to 1983 Amendment ("The term 'de novo' signifies that the magistrate's findings are not protected by the clearly erroneous doctrine . . . .").

### III. LEGAL STANDARDS

#### A. Sufficiency of the Indictment

"An indictment is considered legally sufficient if it: (1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense." *Schmitz*, 634 F.3d at 1259 (citation omitted). "These requirements satisfy the Sixth Amendment's guarantee of notice to the accused of the nature and the cause of the accusation, and the Fifth Amendment's assurance that a grand jury

will return an indictment only when it finds probable cause for all elements of the crime." *United States v. Wayerski*, 624 F.3d 1342, 1349 (11th Cir. 2010); *see United States v. Italiano*, 837 F.2d 1480, 1482 (11th Cir. 1988). An indictment that fails to adequately allege an essential element of a charged offense is defective, and the charge must be dismissed. *See United States v. Bobo*, 344 F.3d 1076, 1085–86 (11th Cir. 2003).

"In ruling on a motion to dismiss for failure to state an offense, a district court is limited to reviewing the *face* of the indictment and, more specifically, the *language used* to charge the crimes." *Sharpe*, 438 F.3d at 1263 (emphasis original). "It is well-settled that 'a court may not dismiss an indictment . . . on a determination of facts that should have been developed at trial.'" *Id.* (quoting *United States v. Torkington,* 812 F.2d 1347, 1354 (11th Cir. 1987)).

"The indictment must contain 'a plain, concise, and definite written statement of the *essential facts* constituting the offense charged[.]'" *Schmitz*, 634 F.3d at 1261 (quoting Fed. R. Crim. P. 7(c)(1)) (emphasis and alteration original). Thus, "[e]ven when an indictment tracks the language of the statute, it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged." *Schmitz*, 634 F.3d at 1261 (cleaned up). If the indictment uses generic terms, it must state the offense with particularity. *Bobo*, 344 F.3d at 1083. "When the facts alleged in the indictment permit an inference that the grand jury found probable cause, the indictment satisfies the Fifth Amendment."

8

*Wayerski*, 624 F.3d at 1350.[2] But "[a]n indictment that requires speculation on a fundamental part of the charge is insufficient." *Bobo*, 344 F.3d at 1084.

In determining an indictment's sufficiency, the Court reads the indictment "as a whole and give[s] it a 'common sense construction,'" which means that "the indictment's validity is to be determined by practical, not technical considerations." *Schmitz*, 634 F.3d at 1259–60 (cleaned up). However, this "does not mean factual allegations in one count are somehow automatically incorporated into other counts." *Id.* at 1262. Instead, "each count of an indictment must be regarded as if it were a separate indictment and must stand on its own content without dependence for its validity on the allegations of any other count not expressly incorporated." *Id.* at 1261 (quoting *United States v. Huff,* 512 F.2d 66, 69 (5th Cir. 1975)).

### B. Elements of Wire Fraud and Conspiracy to Commit Wire Fraud

A defendant violates the federal wire fraud statute, 18 U.S.C. § 1343, if he (1) intentionally[3] participates in a scheme to defraud a person of money or property,

---

[2] *See also Russell v. United States*, 369 U.S. 749, 768 (1962) ("It has long been recognized that there is an important corollary purpose to be served by the requirement that an indictment set out 'the specific offence, coming under the general description,' with which the defendant is charged. This purpose, as defined in *United States v. Cruikshank*, 92 U.S. 542, 558 [(1875)], is 'to inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction, if one should be had.'").

[3] "To gauge a defendant's intent to commit a fraudulent scheme . . . we must determine whether the defendant attempted to obtain, by deceptive means, something to which he was not entitled." *United States v. Bradley*, 644 F.3d 1213, 1240 (11th Cir. 2011).

and (2) uses wire communications to further that scheme. *Kelly v. United States*, 140 S. Ct. 1565, 1571 (2020); *United States v. Ross*, 131 F.3d 970, 984 (11th Cir. 1997). "A scheme to defraud requires proof of a material misrepresentation, or the omission or concealment of a material fact calculated to deceive another out of money or property." *United States v. Martin*, 803 F.3d 581, 588 (11th Cir. 2015) (citation omitted); *see United States v. Hasson*, 333 F.3d 1264, 1270–71 (11th Cir. 2003). Generally, a statement or fact is "material" if it "has a natural tendency to influence, or is capable of influencing," the decisionmaker to which it was addressed. *Neder v. United States*, 527 U.S. 1, 16 (1999).

The Eleventh Circuit has held that the intentional omission or concealment of material information gives rise to criminal liability under the federal wire fraud statute "where the defendant had a duty, explicit or implicit, to disclose." *United States v. Browne*, 505 F.3d 1229, 1265 (11th Cir. 2007); *see United States v. Bradley*, 644 F.3d 1213, 1247–48 (11th Cir. 2011). Whether such duty exists must be determined "on a case by case basis, with appropriate attention given to the nature of the transaction and the relationship between the parties." *Langford v. Rite Aid of Ala., Inc.*, 231 F.3d 1308, 1313 (11th Cir. 2000); *see also Waymer*, 55 F.3d at 571 ("An affirmative duty to disclose need not be explicitly imposed; it may instead be implicit in the relationship between the parties.").

For example, a duty to disclose may arise when a defendant offers "half-truths," or partial or ambiguous statements, which require further disclosure to avoid creating false or misleading representations. *See Cont'l 332 Fund, LLC v.*

10

*Albertelli*, No. 20-13133, 2021 WL 3184586, at *4 (11th Cir. July 28, 2021); *see also Bradley*, 644 F.3d at 1247–48 (quoting *United States v. Townley*, 665 F.2d 579, 585 (5th Cir. 1982)) ("[U]nder the mail fraud statute, it is just as unlawful to speak 'half truths' or to omit to state facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading."); *United States v. O'Malley*, 707 F.2d 1240, 1247 (11th Cir. 1983) ("Fraud, for purposes of a mail fraud conviction, may be proved through the defendant's non-action or non-disclosure of material facts intended to create a false and fraudulent representation.").

To establish a conspiracy to commit wire fraud under 18 U.S.C. § 1349, the government must show that (1) two or more persons agreed to a common and unlawful plan to commit wire fraud as alleged in the indictment; (2) the defendant knew of the unlawful plan; and (3) the defendant knowingly and voluntarily joined the plan. *See United States v. Feldman*, 931 F.3d 1245, 1257 (11th Cir. 2019); *Martin*, 803 F.3d at 588.

**IV.   DISCUSSION**

Upon a *de novo* review, Counts 2–10 of the Indictment do not sufficiently allege facts constituting the essential elements of the charged wire fraud offenses. *See Schmitz*, 634 F.3d at 1261; Fed. R. Crim. P. 7(c)(1). Although the counts' general descriptions of the offenses track the relevant statutory language, they provide few facts describing the particulars of the alleged scheme to monetarily defraud Georgia Tech. The Court thus cannot infer that the grand jury returned the

charges only after finding probable cause to support all of the necessary elements of the crimes, *see Wayerski*, 624 F.3d at 1350, and the Indictment must be dismissed as insufficient, *see Schmitz*, 634 F.3d at 1260–64 (vacating defendant's conviction and holding that the district court erred in not dismissing federal-funds fraud counts as insufficient where the indictment tracked the statutory language but did not allege adequate facts to state an offense under the statute); *Bobo*, 344 F.3d at 1083–86 (vacating defendant's conviction and holding that the district court erred in not dismissing healthcare fraud counts as insufficient where the indictment tracked, in part, the statutory language but did not allege sufficient facts to state an offense under the statute); *United States v. Tripodis*, No. 1:18-CR-240-1-TWT, 2020 WL 914681, at *3 (N.D. Ga. Feb. 26, 2020) (dismissing wire fraud and mail fraud counts where the indictment tracked the statutory language but did not include sufficient facts to adequately allege each element of the offense).

To start, the facts alleged in support of the wire fraud counts do not set forth a cognizable scheme to monetarily defraud Georgia Tech. *See Bobo*, 344 F.3d at 1084–86; *United States v. Adkinson*, 135 F.3d 1363, 1377 (11th Cir. 1998). The Indictment alleges that Chang "hired J.Z. and X.L as postdoctoral researchers" and set the salaries they received from Georgia Tech. *See* (Doc. 1 ¶ 51). It then states that "unbeknownst to Georgia Tech officials," co-defendant Jianjun Yu directed J.Z. and X.L. to work at ZTE "at certain times during their employment with Georgia Tech." (*Id.*). Finally, it alleges that "[e]ven though J.Z. and X.L. were

12

working for ZTE" at "certain times" during their Georgia Tech employment, Chang directed Georgia Tech to make salary payments to them. (*Id.*). The Indictment identifies the dates that certain salary payments were made, the amounts paid, and the bank accounts to which they were wired. *See* (*id.* at ¶ 53). But ultimately, when the factual allegations are viewed as a whole, they do not describe a scheme to defraud as defined under the wire fraud statute.

"A scheme to defraud requires proof of a material misrepresentation, or the omission or concealment of a material fact calculated to deceive another out of money or property." *Martin*, 803 F.3d at 588 (citation omitted). Here, the Indictment's factual allegations state that Chang hired J.Z. and X.L., set their Georgia Tech salaries, and arranged for certain salary payments to be wired to them. It does not allege that Chang made misrepresentations to Georgia Tech or omitted or concealed certain information from the university.[4] Although the Indictment alleges that Chang directed Georgia Tech to pay their salaries "[e]ven though" they were at times performing work for ZTE, (Doc. 1 ¶ 51), it fails to state with the requisite clarity or specificity that he was being deceptive or—more generally—that he actually knew that they were working for ZTE.[5] The law is clear

---

[4] To be sure, the Bill of Particulars further explains that Chang "fraudulently omitted material facts by issuing half-truths and by concealing information about the postdoctoral researchers' work for ZTE." (Bill of Particulars, Doc. 104 at 1). "But it is a settled rule that a bill of particulars cannot save an invalid indictment." *Russell*, 369 U.S. at 770. The Court may only look to the allegations in the challenged counts of the Indictment to determine their sufficiency. *See Sharpe*, 438 F.3d at 1263.

[5] The Indictment alleges that it was Jianjun Yu who directed J.Z. and X.L. to work for ZTE "at certain times" during their Georgia Tech employment. (Doc. 1 at ¶ 51). It does not state that Chang

that indictment by insinuation or ambiguity is not permitted. *See Bobo*, 244 F.3d at 1084 ("An indictment that requires speculation on a fundamental part of the charge is insufficient.").

Further, the Indictment fails to allege why J.Z. and X.L. working for ZTE "at certain times" during their Georgia Tech employment was *material* to the payment of their Georgia Tech salaries. A false statement or omission is material "if it has a natural tendency to influence, or is capable of influencing the decision of the decisionmaker to whom it was addressed." *See Neder*, 527 U.S. at 16; *United States v. Bazantes*, 978 F.3d 1227, 1246 & n.8 (11th Cir. 2020). Here, the Government does not allege that the terms of J.Z.'s and X.L.'s employment with Georgia Tech (or some other university policy) would have barred them from receiving their Georgia Tech salaries because they worked "at certain times" for ZTE. *See United States v. Wright*, No. CRIM. 11-0262-WS, 2012 WL 426681, at *3 (S.D. Ala. Feb. 9, 2012) (holding that wire fraud charges adequately pled materiality where the indictment alleged "a scheme to defraud . . . designed to conceal that federal grant funds were being expended on duplications of benefits, contrary to the requirements of the grant"). Nor does it allege that during the "certain times" that J.Z. and X.L. worked at ZTE, they failed to fulfill their obligations as Georgia Tech employees. *See Schmitz*, 634 F.3d at 1260 (upholding the sufficiency of mail fraud charges where the indictment alleged that defendant defrauded her employer out

---

was aware of this direction. To the contrary, the Indictment alleges that "Georgia Tech officials" were unaware of their work for ZTE. *See* (*Id.*).

14

of her salary by performing "virtually no services," generating "virtually no work product," and by "preparing and submitting false statements regarding the number of hours she worked and the volume and nature of her services."); *cf. Kelly*, 140 S.Ct. at 1573 (indicating that a mayor who used deception to get "on-the-clock" city employees to renovate his daughter's home could be prosecuted for defrauding the city out of their labor costs). Without such additional context, one can only speculate as to whether J.Z.'s and X.L.'s alleged work for ZTE was capable of influencing the decision to pay them their Georgia Tech salaries, or more generally, meant they were not entitled to the salary payments.[6] *See Bobo*, 344 F.3d at 1084; *see also Tripodis*, 2020 WL 914681, at *3 (dismissing wire and mail fraud counts as insufficient because the indictment's factual allegations left certain elements of the offenses "entirely to speculation").

Due to the factual inadequacies of the Indictment, the Court cannot infer that the grand jury found probable cause to support each necessary element of the wire fraud charge. *See Wayerski*, 624 F.3d at 1350. And since the substantive wire fraud count does not sufficiently allege scheme to defraud, the conspiracy count based upon that charge is also deficient. *Bobo*, 344 F.3d at 1086. Because the Indictment fails to adequately allege wire fraud or conspiracy to commit wire fraud

---

[6] The Court notes that it is quite common for workers—including salaried workers—to hold multiple jobs. It would therefore be concerning for the Government to embrace an expansive theory that salaried employees can commit wire fraud by working a second job without informing their primary employer, especially where there is no indication that doing so is prohibited by the terms of their employment.

under the relevant statutes, 18 U.S.C. §§ 1343, 1349, Counts 2–10 are deficient as a matter of law and must be dismissed. *See id.*

## V. CONCLUSION

Accordingly, the Court **DECLINES TO ADOPT** the specific portion of the R&R related to the Motion to Dismiss, [Doc. 99-2 at 5–21], and **GRANTS** Defendant's Motion to Dismiss Counts 2–10 of the Indictment, [Doc. 47].

**IT IS SO ORDERED** this 1st day of March, 2024.

_____
**Honorable Amy Totenberg**
**United States District Judge**